CRIMES AND PUNISHMENTS A bingo licensee is not authorized by 21 O.S. 995.1 [21-995.1] — 21 O.S. 995.18 [21-995.18] (1977) to hire himself out to a person, organization, or corporation for purposes of conducting a bingo game. Bingo licensees may not co-mingle their sessions and thereby circumvent the intent and proscriptions of 21 O.S. 995.10 [21-995.10] (1977). Finally, any person conducting a game of bingo for which a prize is made or awarded must be a licensee operating pursuant to 21 O.S. 995.1 [21-995.1] — 21 O.S. 995.18 [21-995.18] (1977). The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following four (4) questions: 1. May a person, organization, or corporation pay a bingo licensee a fixed sum of money and retain all monies over the fixed sum of money? 2. May bingo licensees co-mingle their sessions and offer a price greater than One Hundred Dollars ($100.00) in a single game ? 3. May bingo licensees co-mingle their sessions and offer an aggregate amount of all prizes in all games played on a single occasion exceeding Five Hundred Dollars ($500.00) ? 4. May a person, organization, or corporation operate or conduct a game or games of bingo for licensees of bingo? Essential to resolving these questions is a consideration of 21 O.S. 995.1 [21-995.1] through 21 O.S. 995.18 [21-995.18] (1977). Your first question impliedly involves whether or not a bingo licensee may be "hired" by a nonlicensed person, organization, or corporation to conduct a bingo game to the ultimate benefit of both parties. An examination of the pertinent statutes reveals no authorization for a licensee to conduct a "hired game"; we must therefore consider whether or not such authorization could or should be found via implication. A reading of the entire Act clearly reveals that the Legislature intended that it be highly restrictive, facilitating the greatest possible control and policing of conduct of bingo games. While that which is within the manifest intention of the Legislature, as gathered from the statute itself, may be read into a statute, the statute should not be construed more broadly than its terms require. American-First Title Trust Co. v. First Federal Savings and Loan Association of Coffeyville, Kansas, 415 P.2d 930 (Okl. 1965). Further, in order to expand the legislative authorization impliedly, we must find this extension to be necessarily implied, see Missouri, O. G. Railway Co. v. State, 29 Okl. 640,119 P. 117 (1911). An expansion of authority such as that suggested by your first question is not necessarily implied from the authorization given in 21 O.S. 995.1 [21-995.1] — 21 O.S. 995.18 [21-995.18] (1977). Permission for qualifying organizations to conduct bingo games does not imply an authorization to hire oneself out in such capacity. Your second and third questions may be answered in conjunction, as both involve an interpretation of 21 O.S. 995.10 [21-995.10], and ask if sessions may be commingled so as to circumvent the limitations on prize money established by said section. The relevant part of 21 O.S. 995.10 [21-995.10] (1977) reads as follows: "21 O.S. 995.10 [21-995.10]. Limitation on sessions and prizes. * * * "No prize greater in the amount or value than One Hundred Dollars ($100.00) shall be offered or given in any single game of bingo conducted under any such license and the aggregate amount of all prizes offered or given in all games played on a single occasion shall not exceed Five Hundred Dollars ($500.00) ." It is to be noted that the title to this statute indicates that the section was intended to limit sessions and prizes; title is a proper guide in ascertaining legislative intent. Perry v. City of Oklahoma City, 470 P.2d 974 (Okl. 1970). To interpret the statute in such a manner as to authorize a group of licensees to band together and thereby exceed the limitations prescribed by the Legislature for any single game, would be unreasonable. Where there are two possible interpretations of a statute, that which is reasonable and sensible should be preferred to that which renders a part of the statute useless or permits an absurd result, Tannehill v. Special Indemnity Fund, 538 P.2d 590 (Okl. 1975). Your final question involves merely a plain reading of 21 O.S. 995.12 [21-995.12] (1977): "No person, except a licensee operating pursuant to this act, shall conduct any game of bingo for which a prize is made or to the winner of which any prize is awarded." (Emphasis added) There is no statutory interpretation required or permitted; when the language of a statute is plain and unambiguous, no room for construction exists, Oldham v. Drummond Board of Education of Independent School District No. I-85,542 P.2d 1309 (Okl. 1975). It is clear that any person conducting a game of bingo must be a licensee. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: A bingo licensee is not authorized by 21 O.S. 995.1 [21-995.1] — 21 O.S. 995.18 [21-995.18] (1977) to hire himself out to a person, organization, or corporation for purposes of conducting a bingo game. Bingo licensees may not commingle their sessions and thereby circumvent the intent and proscriptions of 21 O.S. 995.10 [21-995.10] (1977). Finally, any person conducting a game of bingo for which a prize is made or awarded must be a licensee operating pursuant to 21 O.S. 995.1 [21-995.1] — 21 O.S. 995.18 [21-995.18] (1977). (H. LEE SCHMIDT) (ksg) ** SEE: OPINION NO. 79-048 (1979) ** ** SEE: OPINION NO. 89-059 (1990) **Disposition: ** SEE: OPINION NO. 89-544 (1989) (UNPUBLISHED) **